UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

- against -

ONE CUNEIFORM TABLET KNOWN AS THE GILGAMESH DREAM TABLET,

Defendant In Rem,

- and -

HOBBY LOBBY STORES, INC.,

Claimant.

Civil Action No. 20-2222 (AMD)

CLAIMANT HOBBY LOBBY STORES, INC.'S
VERIFIED CLAIM OF INTEREST

1. Pursuant to Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, Claimant, Hobby Lobby Stores, Inc. ("Claimant" or "Hobby Lobby"), by and through its counsel, Pearlstein & McCullough LLP and Tucker Levin, PLLC, hereby files this verified claim and asserts its interest and right in the *Defendant In Rem* in this action.

2. Hobby Lobby has a claim to, interest in, and right to the ancient Mesopotamian cuneiform tablet bearing the part of the Epic of Gilgamesh, c. 1600 BC, known as the "Gilgamesh Dream Tablet ," (the "*Defendant In Rem*") seized by the United States pursuant to the Verified Complaint for Forfeiture *In Rem* filed in this action under Title 19, United States Code, Section 1595(a)(c)(1)(A) on or about September 24, 2019. Defendant Property is currently in the custody of the United States Department of Homeland Security, Homeland Security Investigations.

3. The basis of Hobby Lobby's interest in the property is as follows:

Pursuant to a Private Sale Agreement dated July 14, 2014 (the "Private Sale Agreement") among (i) Hobby Lobby, as Buyer, (ii) Christie's, Inc. ("Christie's") as Seller's agent, and (iii) an individual known as John Doe #1,[1] Christie's consignor, as

[1] The Private Sale Agreement did not disclose the identity of Seller.

Seller, Hobby Lobby purchased the Defendant In Rem from Christie's and John Doe #1 (collectively "the Sellers") for $1,694,000 (the "Purchase Price"). Thus, the *Defendant In Rem* is owned by Hobby Lobby.[2]

Additional Background

Upon information and belief, the *Defendant In Rem* was first seen on the international art market by a dealer in the United States (the "American Dealer") in 2001 while the *Defendant In Rem* was in the possession of an antiquities dealer in London. Upon information and belief, in 2003, the American Dealer purchased the *Defendant In Rem* in London.

Upon information and belief, in 2007, the American Dealer sold the *Defendant In Rem* to Michael Sharpe Rare and Antiquarian Books in Pasadena, California ("Michael Sharpe") and provided Michael Sharpe with a false provenance that the Defendant In Rem had been part of an auction sale on August 20, 1981 at Butterfield and Butterfield, San Francisco ("Butterfield's"), lot number 1503 (the "Butterfield's Provenance"). Michael Sharpe published a catalogue including the *Defendant In Rem* with an asking price of $450,000 and, in 2007, sold the *Defendant In Rem* to Biblioctopus Rare Books of Century City, California. Upon information and belief, John Doe #1 purchased the *Defendant In Rem* from an intermediate holder prior to the fall of 2013.

Upon information and belief, John Doe #1 consigned the *Defendant In Rem* to Christie's in London for private sale in the fall of 2013. In May or June of 2014, Hobby Lobby, through an agent, viewed the *Defendant In Rem* at Christie's in London. As Christie's was aware, Hobby Lobby was active in the private art market in building a biblical antiquities collection to serve as the base collection for a new museum planned to be built in Washington, DC, the Museum of the Bible ("MOTB").

Christie's International Head of Books, Margaret Ford ("Ms. Ford") provided Hobby Lobby with a specially prepared private sale catalogue (the "Private Sale Catalogue") that included the following provenance:

> **Provenance**
> Butterfield and Butterfield, San Francisco, 20 August 1981, lot 1503.

---

[2] By way of further background for the Court's edification, in connection with the sale of the *Defendant In Rem* to Hobby Lobby, the Sellers made certain representations and warranties that, unknown to Hobby Lobby, were false. These misrepresentations are the subject of a separate, but related, lawsuit filed by Hobby Lobby against Christie's, which is entitled *Hobby Lobby Stores, Inc. v. Christie's Inc. and John Doe #1*, Civil Docket No. 20-Civ.-2239 (AMD) (EDNY). In short, that lawsuit alleges that the Sellers made implied warranties under the New York Uniform Commercial Code as to the Sellers' good title to the *Defendant In Rem* and its merchantability (*i.e.*, salability). The Private Sale Agreement contained express warranties, none of which could be squared with the facts, that John Doe #1 (i) owned the *Defendant In Rem*, (ii) had the right to transfer ownership of the *Defendant In Rem* free of restrictions or claims by a third party, and (iii) had met all import and export requirements and was not aware that any third party had failed to do so.

with Michael Sharpe Rare and Antiquarian Books, Pasadena, California

The provenance disclosed by Christie's in the Private Sale Catalogue thus (i) included the fictitious Butterfield's sale in San Francisco in 1981; (ii) omitted any reference to the American Dealer who had imported the *Defendant In Rem* into the United States in 2003; and (iii) listed Michael Sharpe, an American bookseller, as the only subsequent owner of the *Defendant In Rem*. Christie's thus intentionally left Hobby Lobby with the erroneous impression that the *Defendant In Rem* had been imported into the United States at a time when there were no import restrictions on Iraqi cultural property and that the Defendant In Rem had remained in the United States since 1981. In fact, however, the American Dealer is alleged in the Government's forfeiture complaint to have illegally imported the object in 2003. Hobby Lobby had no basis to question the provenance Christie's provided in the Private Sale Catalogue.

After the Purchase, Hobby Lobby transferred possession of a group of objects, including the *Defendant In Rem*, to the MOTB. The *Defendant In Rem* was to be included in the initial display at the MOTB's opening on November 17, 2017. Prior to the opening, Hobby Lobby and the MOTB in 2017 again requested that Christie's verify the Butterfield's Provenance. In response to Hobby Lobby's and the MOTB's request, representatives of Christie's Antiquities Department in London: (i) provided Hobby Lobby and the MOTB with additional but, upon information and belief, incomplete, documentation concerning the *Defendant In Rem*'s provenance, again, as it did in 2014, leaving Hobby Lobby with the false impression that Christie's possessed no other documents concerning the *Defendant In Rem*'s provenance, and (ii) upon information and belief, after unsuccessfully attempting to contact the American Dealer in the fall of 2017, falsely and recklessly represented to Hobby Lobby and the MOTB that the American Dealer had confirmed the accuracy of the Butterfield's Provenance in 2014.

On May 18, 2020, the U.S. Attorney's Office for the Eastern District of New York commenced the instant civil forfeiture action to recover the *Defendant In Rem* on the basis of evidence it claims establishes that the *Defendant In Rem* was stolen from Iraq in the 1990's, illegally imported into the United States first by the American Dealer in 2003 and again by Christie's in 2014. A copy of the Government's complaint, the warrant in rem, and Rule G were served on Claimant's counsel by email on May 20, 2020.

4. As laid out herein, Hobby Lobby is the lawful owner of the Defendant Property. Hobby Lobby did not have any knowledge of, let alone participate in, any alleged violation of any customs violation, and contests the government's theory of statutes of limitations and underlying theft pursuant to Title 18, United States Code, Section 2314 as a basis for bringing this action. As such, Hobby Lobby demands the return of its property and the right to defend this action.

Dated: New York, New York
June 22, 2020

Respectfully submitted,

Pearlstein & McCullough LLP

By: ______________________
Michael McCullough
Anju Uchima

641 Lexington Avenue, 13th Floor
New York, NY 10022
Tel: (646) 762-7264
MMcCullough@PMCounsel.com
AUchima@PMCounsel.com

Tucker Levin, PLLC

By: ______________________
Duncan P. Levin

230 Park Avenue, Suite 440
New York, New York 10169
Tel: (212) 330-7626
dlevin@tuckerlevin.com

Attorneys for Plaintiff

VERIFICATION

I, Steven Green, President of Hobby Lobby Stores, Inc., hereby declare that I have read the foregoing verified claim. I verify and declare under penalty of perjury: (1) that the foregoing is true and correct; and (2) that I have been authorized by Hobby Lobby Stores, Inc. to execute this verification on its behalf. Executed this 22nd day of June 2020, in Oklahoma City, Oklahoma.

Steven Green

Sworn to before me on this 22nd date of June, 2020

Oklahoma City, Oklahoma

Notary Public

CINDY BROWN NOTARY #17006352 EXP. 07/11/21 PUBLIC STATE OF OKLAHOMA

CERTIFICATE OF SERVICE

Pursuant to Supp. Rule G(4)(b)(ii)(D), I hereby certify that on this 23rd day of June 2020 a copy of the foregoing verified statement of interest was served on behalf of Hobby Lobby Stores, Inc., via first-class mail and via the Court's electronic filing system ("ECF") upon:

Assistant United States Attorney Karin K. Orenstein
Office of the United States Attorney for the
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

/s/ Michael McCullough
Michael McCullough