```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK

------------------------------X  Docket#
UNITED STATES OF AMERICA,      : 20-cv-02222-AMD-PK
               Plaintiff,      :
                               :
      - versus -               : U.S. Courthouse
                               : Brooklyn, New York
ONE CUNIFORM TABLET            :
KNOWN  AS THE                  :
"GILGAMESH DREAM TABLET"       : July 24, 2020
               Defendant       : 11:05 AM
------------------------------X

        TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
                BEFORE THE HONORABLE PEGGY KUO
                UNITED STATES MAGISTRATE JUDGE
```

**A   P   P   E   A   R   A   N   C   E   S:**

(TELEPHONICALLY)

**For the Plaintiff:**         Ann Catherine Brickley, Esq.
                               Sylvia Shweder, Esq.
                               Karin K. Orenstein, Esq.
                               United States Attorneys Office
                               Eastern District of New York
                               271 Cadman Plaza East
                               Brooklyn, NY 11201-1820

**For the Claimant**
**Hobby Lobby Stores:**        Michael J. McCullough, Esq.
                               Anju Uchima, Esq.
                               Pearlstein & McCullough LLP
                               641 Lexington Avenue
                               Ste 13th Floor
                               New York, NY 10022

                               Duncan Patrick Levin, Esq.
                               Tucker Levin, PLLC
                               230 Park Avenue
                               Suite 440
                               New York, NY 10169

**Transcription Service:**     Transcriptions Plus II, Inc.
                               61 Beatrice Avenue
                               West Islip, New York 11795
                               laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

```
                                                                  2
                          Proceedings
 1              THE COURT:  This is an Initial Conference in
 2   the matter of the United States of America v. One
 3   Cuniform Tablet known as the "Gilgamesh Dream Tablet",
 4   docket number 20-cv-2222.  Magistrate Judge Peggy Kuo
 5   presiding.
 6              Will the parties please state their appearances
 7   for the record, starting with plaintiff?
 8              MS. ORENSTEIN:  For the United States, this is
 9   Karin Orenstein, Assistant United States Attorney, and
10   with me for the government are Sylvia Shweder, also
11   Assistant United States Attorney, and trial attorney, Ann
12   Brickley, from the Money Laundering and Asset Recovery
13   Section.
14              Good morning, your Honor.
15              MS. BRICKLEY:  Good morning.
16              THE COURT:  Good morning.
17              And for the claimant?
18              MR. MCCULLOUGH:  Good morning, your Honor.
19              Michael McCullough from Pearlstein &
20   McCullough, for claimant Hobby Lobby Stores, Inc., on the
21   phone with me are Anju Uchinma, from Pearlstein &
22   McCullough and Duncan Levin from Tucker Levin.
23              MR. LEVIN:  Good morning, your Honor.
24              MR. UCHINMA:  Good morning, your Honor.
25              THE COURT:  Good morning, everyone.
```

Proceedings

3

1   So we're here for an initial conference, and
2  this is an opportunity for everyone to exchange
3  information and let the Court know about the facts of the
4  case that you think need to be highlighted, or laid out,
5  any legal issues you think may be implicated and might
6  need attention early on, and finally, the procedures that
7  we'll be following here.
8       So at the end of the conference, I would like
9  to make sure that everybody has a roadmap for where this
10 case is going, and what the timetable for that might be.
11 I'll preface this by saying that I know when I entered
12 the call, that there are quite a large number of people,
13 and I know that several of the spectators include
14 student interns who are interested in this case.  So I
15 would just ask the parties to maybe be a little bit more
16 explicit than you might be normally, for the benefit of
17 the students, so they can learn more about what is
18 happening in this case, and how we'll be proceeding.
19      So I've read the papers, and so I'm familiar
20 with what is involved here, but I'll give the parties an
21 opportunity to tell me and everyone else more about the
22 case, and like I said, at the end of it, we'll set out a
23 roadmap for where we're going.
24      So Assistant United States Attorney Orenstein,
25 why don't you start and lay things out for everyone?

Proceedings

4

1  MS. ORENSTEIN: Sure, and with the caveat that
2  I'm doing so a little bit more for your students than my
3  opposing counsel, who are very familiar with the facts in
4  this forfeiture action, I'll just take it a little bit
5  slow.
6  This is a civil forfeiture action. It's an
7  unusual action, in that it's an in Rem action, it's not
8  against a person, it's against a thing, and that thing as
9  the Court noted, does not have its own attorney, will not
10 be appearing in court, and it is subject to forfeiture,
11 the government alleges because it was brought into the
12 country contrary to law, and specifically because it was
13 stolen property at the time that it was brought into the
14 country.
15 The government has a claim for relief under
16 Title 19, Section 19 -- sorry, 1591(a)(C)(1)(A), that
17 does not specify the time when it entered the country,
18 but there are two entries noted in the allegations; one
19 is in 2003, and the other is in 2014.
20 In 2003, the antiquities dealer mentioned in
21 the complaint, purchased and brought the tablet into the
22 country, knowing that it was likely to have been looted,
23 and known that there was not good provenance for the
24 piece. Provenance is a term of art that comes up in
25 cultural property cases. It refers to the chain of legal

Proceedings 5

ownership of an item over time.

And so when the initial owner in the United States sold the piece, that person created a provenance that was false in order to cover up the fact that legal ownership could not be established, and that the person who brought it in, the antiquities dealer, was on notice that this was a looted item from Iraq.

This provenance that was created in 2007, when the antiquities dealer sold the piece initially, followed the piece as it was sold through other hands. Eventually, the piece was sold through Christie's to Hobby Lobby. Christie's, as referred in the papers as the international auction house. The Court knows there is a, we'll call it a parallel case of Hobby Lobby v. Christie's, that's a civil action, I believe the parties are before the Court on Tuesday in that action, based on some of the same facts that are in this case, this forfeiture action.

Our allegation is that Christie's was on notice that there was a bad provenance for this case because of the communication between a person at Christie's and the antiquities dealer, and that it was nonetheless imported and sold to Hobby Lobby in 2014, and that when Hobby Lobby and the Museum of the Bible, who was in possession of the tablet in 2017 inquired again with Christie's, the

Proceedings 6

1  same provenance was confirmed, even though in 2014,
2  Christie's was put on notice that the provenance was not
3  a good provenance.
4         So we've got these two entries of the piece
5  contrary to law on the grounds that it was stolen
6  property at the time it entered the United States, and
7  that is the basis for our forfeiture action.
8         THE COURT:  Okay.  Thank you, Ms. Orenstein.
9         And so in this action, tell us what needs to
10 happen as we go forward.
11        MS. ORENSTEIN:  So the --
12        THE COURT:  Do we need discovery?  Do we need
13 -- what should be happening from the government's
14 perspective?
15        MS. ORENSTEIN:  The government and counsel for
16 Hobby Lobby, have been communicating since before the
17 action was filed, and has been in a very collegial and
18 cooperative stance about what needs to happen in order to
19 move forward on this case.
20        And we're proposing to do expedited discovery
21 on a dispositive issue, which is the 2003 importation,
22 and the government is prepared to turn over within the
23 next three to four weeks, any materials that are on-hand
24 that relate to the antiquities dealer, and the person who
25 authenticated the piece, Cuniform expert, mentioned in

                                                                    7
                        Proceedings

1    the complaint, and even provide affidavits from those
2    people, so that Hobby Lobby can assess the facts that the
3    government and has alleged, and subject to what I hope
4    will be approved by the Court, a protective order, be
5    able to share that material with Christie's, so that they
6    can also on a parallel track, see whether their case
7    might be resolved by having more information.
8              THE COURT:  Okay.  And is there any discovery
9    that you need from Hobby Lobby?
10             MS. ORENSTEIN:  Not at this time.  At this
11   time, we believe that fast-tracking discovery from the
12   government, as I say within three to four weeks, and then
13   giving Hobby Lobby a month to evaluate and communicate
14   with Christie's, may go far in terms of a potential
15   resolution of the cases, and if not, we would then pickup
16   with discovery again at that point.
17             THE COURT:  Okay.  Thank you very much for
18   that.
19             Mr. McCullough, why don't you tell the Court
20   what you would like to say on behalf of your client?
21             MR. MCCULLOUGH:  Sure.  So Hobby Lobby's view
22   of the case is that we're in a unique position here in
23   that when Hobby Lobby purchased the object in 2014, Hobby
24   Lobby had required the seller Christie's and the owner of
25   the piece, who is Christie's consigner, to provide Hobby

Proceedings

8

1  Lobby with information about the history of the object,
2  so Hobby Lobby could make an informed decision of whether
3  to buy it or not.
4         In the antiquities market, this issue of the
5  history of the object, or the provenance, is very
6  important because objects can be legally sold in the
7  market if they are legally owned by the possessor, and
8  that there's no claim by the source country to the
9  object.
10        In this case, the government is claiming that
11 the object was stolen under the National Stolen Property
12 Act, and what that requires under the case law, which is
13 a string of cases in -- called the McClain cases, and in
14 the Southern District, there's the Schultz cases, that
15 require in order for an object to be stole -- an
16 antiquity to be stolen under the National Stolen Property
17 Act, that there was a theft in a foreign country, and
18 it's normally because the object was excavated from the
19 ground illegally at a time when there's a law that
20 forbade that, and vested title in the government to that
21 object.  So we call those title vesting laws.
22        So in this case, if Iraq had a title vesting
23 law, and the object was illegally excavated after that
24 law went into place, it could be stolen under the
25 National Stolen Property Act in the United States.

Proceedings

9

1  I guess the issue we have here is that not only
2  do the statutes -- so we're talking about 1595(a)(C)(1),
3  this is 19 USC 1595(a)(C)(1) makes object imported
4  contrary to law forfeitable.  So it is illegal to import
5  something contrary to law, and the object is subject to
6  forfeiture.
7       Now the statute doesn't define what "contrary
8  to law is."  So you look to other statutes.  In this
9  case, the government is looking at the National Stolen
10 Property Act which is a Title 18 statute.
11      So the National Stolen Property Act requires
12 two things, which is that it's stolen, but also that the
13 person who violates the National Stolen Property Act
14 knows it's stolen.
15      So in this case, we're looking at two issues.
16 We have an importation in 2003, and an importation in
17 2014.  In both cases, the importer would have to know
18 that the object is stolen, and it was imported with that
19 knowledge.
20      So we agree with the government, and this has
21 been a very cooperative process, that if the object was
22 stolen under the National Stolen Property Act, we expect
23 Christie's to compensated Hobby Lobby for the purchase
24 price, and then Christie's would have to consent to the
25 forfeiture.

Proceedings
10

1  So Hobby Lobby would stipulate to the
2  forfeiture if the object is stolen, and Christie's
3  agrees, but at this point, we brought a lawsuit because
4  Christie's does not agree that the property is stolen.
5  They also contend that they never had knowledge of this
6  theft.
7           So although the government has pled facts which
8  indicate knowledge on behalf of Christie's, Christie's
9  has disagreed with the characterization of those facts,
10 and in the civil action that Hobby Lobby has against
11 Christie's is -- has not yet filed an answer.  They've
12 filed a request for a motion to dismiss, so we don't have
13 a substantive responsive, but they have in conference
14 told us that they don't believe those facts to be
15 correct.
16          So I say we're in this unique position because
17 if the object is stolen subject to forfeiture, then Hobby
18 Lobby has a claim against Christie's for the purchase
19 price.  If there are not facts establishing that the
20 object is stolen, but it's both not subject to
21 forfeiture, and our suit against Christie's fails.
22          So the expedited discovery on the 2003
23 importation is important.  I think we also want to get
24 eventually to the 2014 importation because in the event
25 the 2003 importation can't be, or the elements of the

Proceedings

1  violation in 2003 can't be proved, then we'll have to
2  look at the elements of the 2014 importation to see if
3  those elements of fact can be proved.
4      So we agree with the approach, and we do hope
5  it's successful because we believe that in -- the two
6  cases are linked in the sense that the underlying facts
7  are the same, and this issue of theft is key.  If we
8  establish that in the forfeiture, it establishes theft in
9  the civil case, and we should be able to resolve this
10 matter quickly.
11     We think that the discovery should be
12 coordinated, so it's efficient, and we don't waste the
13 Court's time and we don't waste anyone else's time, the
14 government's time.
15     THE COURT:  Okay.  Well, thank you for that,
16 Mr. McCullough.
17     So what it sounds to me like should happen is
18 that there will be expedited discovery on the 2003
19 importation, Ms. Orenstein suggested three or four weeks
20 where the government could turn that information over.
21 There will be a protective order, so the information
22 could be shared with not just Hobby Lobby, but also with
23 Christie's, and then after a month of trying to work
24 things out, if that doesn't work, then you'll move
25 forward to the next phase which -- Ms. Orenstein, is the

12

Proceedings

1  next phase then discovery on the 2014 importation, or is
2  it some other thing?
3              MS. ORENSTEIN:  There could be additional
4  discovery on the 2003 importation, and there could be
5  discovery on the 2014 importation as well at that point.
6              THE COURT:  Okay.
7              MS. ORENSTEIN:  And the government is prepared
8  to also turn over at this time, pursuant to a protective
9  order, all of the information that it has on hand
10 regarding both importations, and other communications.
11             THE COURT:  Okay.
12             MS. ORENSTEIN:  So it will facilitate discovery
13 as well.
14             THE COURT:  All right.  So are you saying that
15 you don't need the phased discovery of the 2003 source,
16 and the 2014, you can do -- you'll produce the discovery
17 for both importations immediately?
18             MS. ORENSTEIN:  We'll produce whatever we have
19 on hand, plus affidavits from those two witnesses related
20 to -- actually, they do relate to both the 2003 and 2014
21 importation, but if there needs to be any further
22 discovery of these issues through, for example,
23 depositions, we would ask to wait until a second phase.
24             THE COURT:  Okay, I understand.  And if you're
25 not able to resolve at that point, what would happen

                                                                13
                            Proceedings

1    after that?
2               MS. ORENSTEIN:  Well, hopefully, we would be
3    back in front of the Court with a plan that we have
4    worked out between the parties but we haven't gotten to
5    that yet at this point.
6               THE COURT:  Okay.  So there might be a motion
7    for judgment on the pleadings, that kind of thing, or
8    then --
9               MS. ORENSTEIN:  Correct.
10              THE COURT:  -- you would be moving to a bench
11   trial.
12              MS. ORENSTEIN:  Right.  We would be looking for
13   -- we would be moving for summary judgment based on the
14   evidence produced, and seeking a briefing schedule for
15   that.
16              THE COURT:  Okay.  And is there anything with
17   regard to the other case that Hobby Lobby has brought
18   against Christie's that will impact this case moving
19   forward, or this case can simply go forward because I
20   know that in the other case, there's a pre-motion
21   conference before Judge Donnelly on July 28th.  It's a
22   motion to compel arbitration, as well as a motion to
23   dismiss.  So depending on how things go there, there may
24   be additional time needed for that process to play out.
25              So from your perspective, is there any reason

```
                                                               14
                             Proceedings
1    this case is -- or the forward movement of this is
2    contingent on the other case at all, or we can simply
3    move forward on this case, at its own pace?
4              MS. ORENSTEIN:  From the government's
5    perspective, this case should move forward at its own
6    pace unconnected to the other but we are trying to be
7    mindful of the impact that discovery in this case can
8    have on the other case.
9              THE COURT:  Okay.  All right.
10             So Mr. McCullough, do you have any sense of the
11   timing, or we should just move forward, and perhaps I
12   should just ask the parties to give me a schedule for
13   this first phase of discovery, or we can decide on that
14   now, and just enter it, and then see what happens before
15   trying to figure out the rest of the roadmap?
16             MR. MCCULLOUGH:  Yeah, I think we agree that we
17   could decide now on a timetable for this first phase.
18             THE COURT:  Okay.
19             MR. MCCULLOUGH:  And then revisit it later.
20             THE COURT:  That sounds good.  So I am looking
21   at my calendar today, July 24th.  If I gave you three or
22   four weeks, we're looking at August 21st, August 28th,
23   what should I say for the government to make its
24   disclosures?
25             MS. ORENSTEIN:  August 21st is fine, that's
```

```
                                                              15
                        Proceedings
1    four weeks.
2              THE COURT:  Okay.  So August 21, the government
3    will make its disclosures, then they'll see -- it sounded
4    like another month for the parties to review, and see if
5    there's any follow-up discovery that they would like to
6    do.
7              MR. MCCULLOUGH:  I think a month is adequate.
8    It's probably more than adequate.
9              THE COURT:  Okay, great.  And in the meantime,
10   you should submit a protective order if you want the
11   Court to enter it as soon as possible, so you can get
12   that started, okay?
13             MS. ORENSTEIN:  Okay.
14             THE COURT:  I have --
15             MS. ORENSTEIN:  We've circulated a draft
16   protective order, and we hope to finalize it within the
17   next few days, so we can start discovery production.
18             THE COURT:  Okay, great.  I do have a form
19   protective order that I'd like the parties to consider
20   because it makes my review easier.  If you could start
21   there, and make any changes that you have, that would be
22   very useful.
23             MS. ORENSTEIN:  Your Honor, the concerns that
24   we have about using the standing order on the Court's
25   chamber's website is that it doesn't necessarily account
```

```
                                                             16
                         Proceedings
1    for the concerns that my witness' counsel has under the
2    Privacy Act.
3              THE COURT:  Okay.
4              MS. ORENSTEIN:  The standing order does allow
5    for us to apply for additional protection, and so I think
6    we're pretty much going straight to a request for
7    additional protection, I'd ask the Court to allow us to
8    present a proposed order that's not based on the
9    Court's --
10             THE COURT:  All right.  So given that, that
11   would be useful, and if you could take a look -- it
12   sounds like you've already looked at my standard
13   protective order, and you could make reference to things
14   that you're -- draw my attention to the things that
15   you're seeking that are different, that will facilitate
16   my review.
17             MS. ORENSTEIN:  All right.
18             THE COURT:  And so once you've had the
19   discovery, and the month to review, then it sounds like
20   you should just give me a status report, and let me know
21   what you want to do moving forward, whether you need more
22   time to consider a settlement in this case, or whether
23   you think there is a need for further discovery, or
24   whether you're then ready to move onto the next phase,
25   which may be a summary judgment motion.  All right?
```

                                                                17
                         Proceedings

1               So if I say by September 25th, you'll let me
2    know in a joint status report, does that give you enough
3    time?
4               MS. ORENSTEIN:  By written status report to you
5    on the 25th, that's fine.
6               THE COURT:  Yes.
7               MS. ORENSTEIN:  Okay.
8               MR. MCCULLOUGH:  We agree, that's fine with us.
9               THE COURT:  Okay, great.  That sounds like a
10   good plan, and then I think everybody will have a better
11   idea of where we are and what needs  to be done.
12              So I will enter that brief scheduling order.
13   The government will make its production by August 21st.
14   Follow-up discovery will occur up to September 21st, and
15   then the joint status report should be filed by
16   September 25th.
17              All right, so thank you.
18              MS. ORENSTEIN:  Thank you, your Honor.
19              THE COURT:  Thank you to both sides, especially
20   for accommodating the students.  I think this was a very
21   informative proceeding today, and thank you for taking
22   the time to explain everything.
23              Is there anything else from the government this
24   morning?
25              MS. ORENSTEIN:  Nothing further from the

```
                           Proceedings                        18
 1  government.
 2          THE COURT:  And Mr. McCullough?
 3          MR. MCCULLOUGH:  Nothing from the claimant,
 4  your Honor.  Thank you.
 5          THE COURT:  All right.  Thank you very much.
 6  This conference is adjourned.  Thank you.
 7          IN UNISON:  Thank you.
 8              (Matter Concluded)
 9                  -o0o-
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

19

**C E R T I F I C A T E**

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **1st** day of **August**, 2020.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.